IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.                                              ) | Criminal No. 3:25-cr-6–HEH |
| ) | **REDACTED** |
| FELIX LAMONT NEAL,                ) | |
| ) | |
| Defendant.       ) | |

## MEMORANDUM OPINION
(Granting Motion to Suppress and Denying Motion to Dismiss)

THIS MATTER is before the Court on Defendant Felix Lamont Neal's ("Defendant") Motion to Suppress Statements Under *Miranda* (the "Motion to Suppress," ECF No. 15), filed on March 6, 2025, and Motion to Dismiss the Indictment[1] (the "Motion to Dismiss," ECF No. 20), filed on March 12, 2025. In his Motion to Suppress, Defendant argues that the Court should suppress Defendant's statements to law enforcement because the officers failed to adequately inform him of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). In his Motion to Dismiss, Defendant asserts that the Court must dismiss the indictment based on the government violating the Due Process Clause. The parties have filed memoranda supporting their respective positions. The Court heard oral argument on April 29, 2025, where the Court granted the Motion to Suppress and denied the Motion to Dismiss for the reasons that follow. (Min. Entry at 2, ECF Nos. 38, 39.)

---

[1] The Motion to Dismiss and subsequent responses were filed under seal. The Court will issue this Opinion in both a sealed and redacted form.

## I. BACKGROUND

Defendant was previously convicted of felony possession with intent to distribute heroin and sentenced to a term of 300 months—which was reduced to 150 months—with three (3) years of supervised release to follow. One (1) condition of the judgment and a term of supervised release was that Defendant "shall not enter into any agreement to act as an informer for a special agent of a law enforcement agency without the permission of the court." (J. at 3, Case No. 3:06-cr-139, ECF No. 35.)

Defendant began his supervised release on September 16, 2021. (Mot. to Dismiss at 2.) In November of 2022, the United States Probation Officer filed a Petition to revoke Defendant's supervised release, alleging several violations of Defendant's supervised release. The Court issued a warrant for Defendant's arrest. (*Id.*) On December 7, 2023, Defendant was arrested at an apartment on Grace Street in Richmond, Virginia. (*Id.*) Although Defendant initially hid in a bedroom closet, he eventually surrendered to the U.S. Marshals and state law enforcement officers who arrested him. (*Id.*) After arresting Defendant, the law enforcement officers briefly interrogated him. (*Id.*)

### A. The Interrogation and Miranda Warning

Defendant was interrogated in the hallway outside of the apartment. (Mot. to Suppress at 1.) Detective Sandy Ledbetter of the Richmond Police Department ("RPD") approached Defendant, who was handcuffed and surrounded by officers, and informed him that he was under arrest. (*Id.*) She then gave the following warning:

> OK. You know – you understand your rights: you have the right to remain silent, anything you say can and will be used against you in a court of law. You have the right to the presence of an attorney during this and any — any future interviews the police may have with you. You understand all that?

(Tr. at 1, ECF No. 15-2.) Defendant nodded affirmatively that he understood these rights. (*Id.*)

After informing Defendant of these rights, Detective Ledbetter and Defendant discussed his federal and city warrants. (*Id.*) After this brief discussion, Detective Ledbetter asked Defendant, "So, my question to you is, do you have any firearms in this house?" (*Id.*) Defendant responded, "Yeah, a .22." He then indicated that the .22 firearm is an "assault rifle" style firearm and it was his. (*Id.*)

**B. Defendant's Supervised Release and Alleged Due Process Violation**

[redacted]





## II. DISCUSSION

### A. The Motion to Suppress Pursuant to *Miranda*

Defendant asserts that because Detective Ledbetter failed to convey the full *Miranda* warnings, the statements he made in response to her questioning—namely, that he had a firearm in the apartment—should be suppressed. (Mot. to Suppress at 2.) Defendant contends—and the government concedes—that Detective Ledbetter did not notify Defendant of the fourth prong under *Miranda*, namely, that if Defendant cannot afford an attorney, then one will be appointed for him prior to any questioning if he so desires.[2] Defendant argues that although *Miranda* and Supreme Court precedent do not necessarily require a verbatim recitation of the *Miranda* warning, courts uniformly find

---

[2] The attached transcript and the video recording submitted to the Court similarly reflects that Defendant was read three (3) of the four (4) rights in a *Miranda* warning.

5

that warnings are insufficient if they do not contain an essential element of the *Miranda* warning. (*Id.* at 3 (citing *United States v. Howard*, No. CR24-4005-LTS-KEM, 2025 WL 354714, at *2 (N.D. Iowa Jan. 31, 2025) ("Many courts have concluded that the Government may not use any statements made by a defendant in its case-in-chief following the omission of the advisement that an attorney will be appointed if he or she cannot afford one . . . . I agree.")).) Defendant recognizes that if he testified, the statements could be used to impeach him, otherwise, the statements should be suppressed.

In response, the government argues that the "'rigidity' of *Miranda* [does not] extend to the precise formulation of the warnings given a criminal defendant," and that "no talismanic incantation [is] required to satisfy its strictures." (Resp. in Opp'n at 3 (quoting *California v. Prysock*, 453 U.S. 355, 360 (1981)).) And here, according to the government, Detective Ledbetter "covered the key bases required by *Miranda*." (*Id.* at 4.) The government suggests *Michigan v. Tucker*, 417 U.S. 433 (1974), is illustrative because the defendant there was similarly not told he could have counsel appointed and the Supreme Court held that the statements were nonetheless voluntary.

But as Defendant points out, the underlying interrogation in *Michigan* occurred before *Miranda* was decided and concerned whether the fruit of the poisonous tree doctrine applied to statements of another person at trial post-*Miranda*. *Id.* at 449 ("The evidence which the prosecution successfully sought to introduce was not a confession of guilt by respondent, or indeed even an exculpatory statement by respondent, but rather the testimony of a third party who was subjected to no custodial pressures.") Yet still, the

6

Supreme Court noted that the trial court properly excluded the defendant's inadequately *Mirandized* statements at trial, pursuant to *Miranda* and its progeny. *See id.* at 446 (citing *Johnson v. New Jersey*, 384 U.S. 719 (1966)). Thus, *Michigan* is distinguishable from the present circumstances.

While the government is correct that *Miranda* does not impose a "magic words" test, *Miranda* and its progeny still require that the warnings be complete. *Miranda*, 384 U.S. at 444. A criminal defendant has the right to not only have a lawyer present during questioning, but he has the separate and distinct right to have a lawyer appointed if he cannot afford one. *Id.* at 472. *Miranda* warnings that fail to convey to a defendant that he has the right "to have a lawyer appointed if he could not afford one prior to and during interrogation" do not appear to be an "effective equivalent" of what *Miranda* requires of law enforcement officers. *See Prysock*, 453 U.S. at 360. The Supreme Court in *Miranda* aptly articulated the importance of the right to appointed counsel:

> In order fully to apprise a person interrogated of the extent of his rights under this system then, it is necessary to warn him not only that he has the right to consult with an attorney, but also that if he is indigent a lawyer will be appointed to represent him. Without this additional warning, the admonition of the right to consult with counsel would often be understood as meaning only that he can consult with a lawyer if he has one or has the funds to obtain one. The warning of a right to counsel would be hollow if not couched in terms that would convey to the indigent—the person most often subjected to interrogation—the knowledge that he too has a right to have counsel present. As with the warnings of the right to remain silent and of the general right to counsel, only by effective and express explanation to the indigent of this right can there be assurance that he was truly in a position to exercise it.

*Miranda*, 384 U.S. at 473 (citations omitted).

Since *Miranda*, the Fourth Circuit has not directly addressed whether failing to communicate the fourth prong of *Miranda* warrants suppression, but Defendant offers persuasive out-of-circuit authorities that support reaching this conclusion. *See, e.g., Howard*, 2025 WL 354714, at *2; *United States v. Xi*, Crim. No. 16-22-5, 2018 WL 3340884, at *11 (E.D. Penn. July 6, 2018) (collecting cases); *United States v. Longoria*, No. 1:07-cr-149, 2008 WL 11440513 (N.D. Ga. Mar. 10, 2008) (recommending suppression because police "failed to advise [the defendant] that, if he could not afford an attorney, one would be appointed by the court to represent him prior to being questioned by the police"), *adopting report and recommendation*, 2008 WL 11440525. Although the government's position is aptly argued, the Court finds that the government has not met its burden of proving Defendant intelligently waived his rights under *Miranda*. *See Miranda*, 384 U.S. at 475 (citing *Escobedo v. Illinois*, 378 U.S. 478, 489 (1964)).

Accordingly, the Court will suppress Defendant's statements and prohibit the government from introducing them in its case-in-chief. Since the statements were undisputedly made voluntarily, if Defendant testified, the government would of course be able to introduce the statements as impeachment evidence. *See Harris v. New York*, 401 U.S. 222, 226 (1971) (permitting use of un-*Mirandized* statements for impeachment).

**B. Motion to Dismiss Indictment for Violation of Due Process**

[redacted]



9



---

[3] Defendant does not suggest the government harbors any personal animus or malintent towards him nor does the Court find anything in the record or its experience to support such a claim.



[redacted]

## IV. CONCLUSION

In sum, for all the foregoing reasons, the Motion to Suppress Statements (ECF No. 15) will be granted and the Motion to Dismiss (ECF No. 20) will be denied.

An appropriate Order will accompany this Memorandum Opinion

/s/
Henry E. Hudson
Senior United States District Judge

Date: June 2, 2025
Richmond, Virginia

---

[4] A little over one (1) year passed between the discovery of the firearm and the instant Indictment—well under the five (5) year statute of limitations. 18 U.S.C. § 3282. Notably, for nearly eight (8) of those months, Defendant was incarcerated.

12